## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**STEVEN ANTHONY WALCOTT, JR.**                              **CIVIL ACTION**

**VERSUS**                                                                        **NO. 13-71**

**OFFICER CRABTREE, ET AL.**                                    **SECTION "I" (3)**

## PARTIAL REPORT AND RECOMMENDATION

Plaintiff, Steven Anthony Walcott, Jr., filed this civil action against Officer Crabtree, "Dr. Jamie," the Terrebonne Parish Consolidated Government,[1] Richard Neal,[2] Sheriff Jerry Larpenter, an unidentified jail warden, and Richard Stalder.  In his complaint, plaintiff claimed that he was denied adequate medical care while incarcerated at the Terrebonne Parish Criminal Justice Complex.

---

[1] Plaintiff named the Terrebonne Parish Criminal Justice Complex "Medical Staff" as a defendant.  However, the "Medical Staff" is not a distinct, juridical entity capable of being sued. See Granger v. Tangipahoa Parish Jail - Medical Staff, Civ. Action No. 12-2276, 2013 WL 1103279, at *2 (E.D. La. Feb. 5, 2013), adopted, 2013 WL 1103293 (E.D. La. Mar. 15, 2013); Verrette v. Stalder, Civ. Action No. 07-9202, 2009 WL 411196, at *3 (E.D. La. Feb. 13, 2009); Mondello v. Bossier Parish Sheriff's Office, Civ. Action No. 04–2609, 2006 WL 1985407, at *4 (W.D. La. June 16, 2006) (Hornsby, M.J.) (adopted by Hicks, J., on July 13, 2006).  The Terrebonne Parish Consolidated Government, the local governmental entity which operates the jail's medical department, has appeared in this lawsuit on behalf of the medical staff.

[2] Neal was erroneously identified in the complaint as "Doctor Petey."

The Terrebonne Parish Consolidated Government and Richard Neal filed a motion to dismiss and for a more definite statement.[3]  Upon reviewing that motion, plaintiff's opposition, and the defendants' reply to that opposition, the undersigned noted that one of the primary defenses raised by the defendants was that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.  Because that issue is more appropriately considered in the context of a motion for summary judgment, the undersigned converted the motion to one for summary judgment and directed the defendants to supplement their motion to include copies of (1) all of plaintiff's grievance records, including all appeals, if any, and (2) the facility's applicable administrative grievance procedure.[4]  The defendants complied with that order.[5]  Plaintiff was ordered to file an opposition to that motion on or before August 16, 2013;[6] however no such opposition was filed.

The Court may grant summary judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted).  The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions,

---

[3] Rec. Doc. 27.

[4] Rec. Doc. 41.

[5] Rec. Doc. 44.

[6] Rec. Doc. 41.

answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).

As noted, plaintiff claimed in this lawsuit that he was denied adequate medical care. Specifically, he alleged that he submitted an emergency sick call request on July 31, 2012, stating that his hand was swollen and causing him excruciating pain.  He was examined by unidentified members of the jail's medical staff, given an ice pack for swelling, and referred to the jail doctor for a more thorough examination.  He was seen by the doctor the following day.  When x-rays were taken, the doctor determined that plaintiff's hand was broken, and he was sent to the hospital.  The hospital doctor recommended that a cast or a splint be used to stabilize the hand; however, Officer Crabtree insisted that the doctor only tape and bandage the hand and instructed her not to administer a narcotic pain reliever.  On August 14, 2012, after requesting pain medication, plaintiff was given a medication which rendered him unconscious for three days and caused chest pains, headaches, and other adverse symptoms.[7]

The defendants argue in their motion that the claims against them must be dismissed because plaintiff failed to exhaust his administrative remedies.  The Prison Litigation Reform Act of 1995

---

[7] This summary of the claims is taken from the allegations in plaintiff's complaint, Rec. Doc. 3, and his opposition to the motion to dismiss, Rec. Doc. 37.  The United States Fifth Circuit Court of Appeals has held that in a case filed by a *pro se* plaintiff, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed."  Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983).  Therefore, a *pro se* litigant's supplemental filings that "embellish[ ] the original complaint's averments" should be considered when ruling on dispositive motions.  Id.  Accordingly, plaintiff's opposition is properly considered part of the complaint in this matter and will be considered in connection with the instant motion.

("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  At the time plaintiff filed this lawsuit, he was confined at the Lafayette Parish Correctional Center.[8]  Because he was incarcerated at the time he filed suit, he remains subject to the exhaustion requirement despite the fact that he has apparently since been released from incarceration.  See, e.g., Williams v. Henagan, 595 F.3d 610, 619 (5th Cir. 2010); Cox v. Mayer, 332 F.3d 422 (6th Cir. 2003); Ahmed v. Dragovich, 297 F.3d 201, 210 (3rd Cir. 2002); Dixon v. Page, 291 F.3d 485, 488-89 (7th Cir. 2002); Harris v. Garner, 216 F.3d 970, 978-79 (11th Cir. 2000).

Federal courts have taken a strict approach to the exhaustion requirement.  For example, the United States Supreme Court held that the exhaustion requirement is "mandatory," Porter v. Nussle, 534 U.S. 516, 524 (2002), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," id. at 532.  The Supreme Court further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  The United States Fifth Circuit Court of Appeals therefore concluded that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in Booth."  Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

---

[8] Rec. Doc. 3, p. 3; see also Rec. Doc. 1, p. 1.

The Fifth Circuit recently emphatically reiterated that the exhaustion requirement is mandatory and cannot be excused by a federal court, holding:

> [T]here can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory. We thus hold that Underwood [v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998),] has been tacitly overruled and is no longer good law to the extent it permits prisoner lawsuits challenging prison conditions to proceed in the absence of pre-filing administrative exhaustion. *District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint.* It is irrelevant whether exhaustion is achieved during the federal proceeding. *Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.*

Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012) (emphasis added; footnote omitted).

In support of their motion, the defendants have submitted a copy of the Administrative Remedy Procedure ("ARP") in place at the Terrebonne Parish Criminal Justice Complex ("TPCJC") and available for use by all inmates housed therein.[9] An inmate initiates the ARP by completing a grievance and giving it to the Grievance Officer. At Step One of the ARP, the Grievance Officer has twenty days to respond to the grievance.[10] If the inmate is not satisfied with the Step One response, he may request Step Two review within five days. A Step Two response will be provided to the inmate within twenty-five days. If the inmate is not satisfied with the Step Two response, he may request Step Three review within five days. A Step Three response will be provided to the inmate within forty days.[11]

---

[9] Rec. Doc. 44-2, p. 1.

[10] Rec. Doc. 44-2, p. 9.

[11] Rec. Doc. 44-2, p. 10.

The defendants contend that plaintiff submitted only one administrative grievance prior to filing this federal civil action.  In that grievance, which was submitted on September 11, 2012, he complained that he requested Tylenol but was instead given Thorazine or some other medication which caused an adverse reaction.[12]  The Step One response was issued on September 19, 2012, and stated that the medication given was in fact Tylenol.[13]  The defendants contend that plaintiff neither proceeded to Step Two of the ARP with respect to that grievance nor filed any other grievances.

As noted, plaintiff was ordered to file an opposition to the defendants' supplemental motion, but he has not done so.  As a result, he has submitted no response whatsoever to their contention that he failed to exhaust all three steps of the administrative remedy procedure.  Moreover, of note, he *conceded* in the complaint that he did *not* complete all steps of the procedure, alleging that he received no Step One response to his grievance.[14]  However, even if that allegation is true, it is of no moment.  The ARP expressly provides that if an inmate does not receive a response to his grievance within the time frames set forth in the ARP, he may then move on to the next step in the

---

[12] The claim regarding the wrong medication is the only claim asserted in the grievance.  Plaintiff filed no grievances whatsoever concerning the remaining claims in this lawsuit.

[13] Rec. Doc. 44-1.

[14] Rec. Doc. 3, p. 3.

6

procedure.[15]  That is determinative here, because even if plaintiff did not receive a copy of the Step

One response, he clearly did not proceed to the two remaining steps of the ARP available to him.

As a result of that failure to pursue his grievance through *all three* steps of the administrative

remedy procedure, plaintiff clearly did not exhaust his administrative remedies.  As the United

States Fifth Circuit Court of Appeals has noted:  "'Exhaust' is defined as 'to take complete

advantage of (legal remedies).'"  Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998) (quoting

Webster's New Int'l Dictionary 796 (3rd ed. 1981)).  Therefore, a plaintiff's administrative remedies

are not exhausted unless he has pursued his grievance through the *conclusion* of a multi-step

administrative remedy procedure.  Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001); see

also Hemphill v. Inglese, 359 Fed. App'x 537, 540 (5th Cir. 2010) ("[C]omplying with the first step

of an administrative grievance procedure will not suffice to exhaust administrative remedies if the

grievance procedure contemplates additional steps.").  Accordingly, the fact that plaintiff initiated

the procedure is simply insufficient to constitute exhaustion, because he failed to pursue the

procedure to its conclusion.

This Court is aware that prisoners who submit administrative grievances at times have their

efforts frustrated by unhelpful and unresponsive prison officials, although the Court expresses no

---

[15] Rec. Doc. 44-2, p. 11.  It is irrelevant that the ARP is phrased in discretionary rather than mandatory terms.  Even if plaintiff was under the impression that seeking further review was *optional* and that inmates were not *required* to request such review if their grievances went unanswered, that would not excuse the federal exhaustion requirement which mandates exhaustion of *all* "available" administrative remedies.  See Smith v. St. Tammany Parish Sheriff's Office, Civ. Action No. 07-3525, 2008 WL 3010038, at *3 n.11 (E.D. La. Aug. 1, 2008); Voyles v. Strain, Civ. Action No. 07-3090, 2008 WL 152111, at *4 n.12 (E.D. La. Jan. 14, 2008); Negron v. Perkins, Civ. Action No. 07-449, 2007 WL 3171542, at *2 n.6 (E.D. La. Oct. 25, 2007); Valentine v. Newton, No. 9:00-CV-1369, 2002 WL 31309181, at *3 (N.D.N.Y. Aug. 15, 2002) (Sharpe, M.J.) (adopted by Kahn, J., on Sept. 11, 2002).

opinion as to whether such a situation was present in this matter.  Nevertheless, the fact remains that

Congress has provided that exhaustion of such remedies is required.  If the federal courts were to

allow inmates to circumvent available administrative procedures by proceeding directly to federal

court, the goals and benefits of the exhaustion requirement would be undermined.  As the United

States Supreme Court noted:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and
> improve the quality of prisoner suits; to this purpose, Congress afforded corrections
> officials time and opportunity to address complaints internally before allowing the
> initiation of a federal case.  In some instances, corrective action taken in response to
> an inmate's grievance might improve prison administration and satisfy the inmate,
> thereby obviating the need for litigation.  In other instances, the internal review
> might "filter out some frivolous claims."  And for cases ultimately brought to court,
> adjudication could be facilitated by an administrative record that clarifies the
> contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (citations omitted).

Because plaintiff failed to pursue his administrative remedies to their conclusion, thereby

giving the defendants a fair opportunity to consider and possibly resolve his claims without

litigation, it is not appropriate for this Court to consider those claims.[16]

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the defendants' motion, Rec. Docs. 27 and 44, be

**GRANTED** and that plaintiff's claims against the Terrebonne Parish Consolidated Government and

Richard Neal be dismissed without prejudice, but with prejudice for the purpose of proceeding *in*

---

[16] Because plaintiff failed to exhaust his administrative remedies, the alternative grounds argued
by the defendants in their motion need not be addressed.

*forma pauperis* pursuant to 28 U.S.C. § 1915, based on his failure to exhaust his administrative remedies.[17]

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[18]

New Orleans, Louisiana, this twenty-third day of August, 2013.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[17]    If an inmate files in federal court an *in forma pauperis* complaint containing claims that have not been exhausted through available administrative remedies, those claims should be dismissed without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915.  See Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998); Fitch v. Louisiana Department of Public Safety & Corrections, Civ. Action No. 08-cv-1126, 2009 WL 1076749, at *3 (W.D. La. Apr. 20, 2009).  Plaintiff filed this lawsuit *in forma pauperis*.  See Rec. Docs. 1 and 2.

[18]    Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

9